UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHIQUITA NEWELL,                    )
                                    )
                    Plaintiff,      )
        v.                          )        12 C 7185
                                    )
ALDEN VILLAGE HEALTH                )
FACILITY FOR CHILDREN AND           )
YOUNG ADULTS,                       )
                                    )
                    Defendant.      )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendant Alden Village Health Facility for Children and Young Adults Inc.'s ("Alden Village") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Alden Village's motion is granted.

## BACKGROUND

The following facts are derived from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Rule 56.1 ("Local Rule 56.1"). The Seventh Circuit has repeatedly stressed that facts should be set forth in a Local Rule 56.1 statement, and it is not the duty of the Court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). It is not the duty of the

court to sift through a party's record to find evidence that supports their claim. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job. . . to make it easy for the court to rule in [their] favor . . . ." *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006). The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record. Merely including facts in a responsive memorandum is insufficient to put issues before the Court. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). In the event that either parties' statements or responses contain legal conclusions or argument, are irrelevant, or are not supported by evidence in the record, they will not be considered by the Court in the ruling for summary judgment.

On December 3, 2008, Alden Village hired Plaintiff Chiquita Newell ("Newell") as a habilitation specialist to assist residents with daily physical activities. Alden Village is a facility designed for housing and providing care for developmentally disabled children and young adults, located in Bloomingdale, Illinois. As a habilitation specialist, Newell was responsible for training, assisting residents with personal hygiene, and coaching them on how to conduct activities for daily living to increase independence skills. Alden Village defined the job requirements of a habilitation specialist as one which "requires physical exertion more than half of the time with moderate to heavy physical effort commonly required . . . including handling or lifting resident[s]." On April 17, 2010, Newell injured her left

wrist while at work. The injury was initially diagnosed as a wrist sprain of the distal radioulnar joint. After suffering the injury to her wrist, Newell returned to work under the light duty requirements issued by her treating physician. She was able to perform the necessary requirements of her job. In June 2010, Newell's injury was evaluated by her doctor again, and what was initially believed to be a wrist sprain was actually an ulnar-sided triangular fibrocartilage complex ("TFCC") tear in her left wrist.

On February 13, 2011, Newell re-injured her wrist in the course of dealing with an unruly patient. After reinjuring her wrist, Newell's treating physician submitted a revised work restriction order on March 3, 2011, mandating that Newell eliminate any contact with residents. In light of her restricted work order, Newell requested a work accommodation. To accommodate Newell, Alden Village placed Newell in the laundry department, which eliminated the need for Newell to engage in physical contact with the residents. From March 2011 until October 2011, Newell worked in the laundry department, located in the lower level of the Alden Village facility. The record does not indicate if Newell had any interaction with residents while performing her duties in the laundry department.

In October 2011, Newell notified Alden Village that she would not be working for a few weeks due to her grandmother's death and that she would return on October 25, 2011. Alden Village agreed with her request, but Newell did not appear for work on the date she submitted as her return date. In accordance with Alden Village's internal policy for dealing with employees that fail to show up for their shift, it

discharged Newell. It was later determined that Newell did in fact call to report her absence due to a severe illness, and her calls were not received by the appropriate facility administrator. Newell clarified the miscommunication with Alden Village, and was reinstated with full back pay, as an employee on light duty status. On December 19, 2011, Newell returned to Alden Village and was not assigned to laundry duties, but had been moved to perform cleaning and filing work at Alden Village. Newell was required to clean medical device holding poles, organize residents' charts, and clean and fill hygiene boxes. In addition to her cleaning and organizational duties, Newell was assigned to assist a disruptive patient. Newell raised her concern that her March 2011 work restriction was still in place and she could not come into physical contact with residents. On December 21, 2011, Alden Village Administrator Laurie Longo ("Longo") met with Newell and asked her to determine if any changes in her work restrictions were warranted. Newell met with her physician at Hinsdale Orthopedics on December 30, 2011.

After Newell's appointment, on December 30, 2011, Hinsdale Orthopedics sent Newell's revised work restrictions to Alden Village. The work restrictions from December 30, 2011 stated that Newell was allowed to return to modified work, but that she may not have "direct contact or interaction[s] with residents." Longo informed Newell that due to her restrictions, she did not want Newell in the building because she could not guarantee that Alden Village could ensure that it followed her

December 2011 work restrictions. After December 30, 2011, Newell never returned to work at Alden Village; however, she was not formally terminated at this time.

On July 25, 2012, Alden Village sent Newell a letter advising her that a position was "open and available to her" at Alden Village within her treating physicians work requirements. Newell did not respond to the letter and in late 2012 Newell received a letter of termination from Alden Village.

On May 8, 2013, Newell filed a six-count amended complaint against Alden Village. Newell's complaint alleged that Alden Village: (i) wrongfully terminated her employment; (ii) failed to promote her; (iii) failed to reasonably accommodate her disability; (iv) failed to stop ongoing harassment; (v) retaliated against her; and (vi) discharged her in retaliation under Illinois common law. Newell sought recovery under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. Following Alden Village's motion to dismiss Newell's complaint, this Court determined that her: (1) ADA discriminatory termination claim; and (2) ADA failure to accommodate claim were both legally viable. On June 6, 2012, Alden Village moved for summary judgment under Federal Rule of Civil Procedure 56.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

*Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the nonmoving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.,* 629 F.3d 653, 656 (7th Cir. 2010). The moving party must identify the specific portions of the record which it believes establishes the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine issue in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *Smith v. Hope Sch.,* 560 F.3d 694, 699 (7th Cir. 2009).

It is the "well-established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur, Ill.,* 814 F.2d 426, 428–29 (7th Cir. 1987). However,"[a] lawsuit is not a game of hide the peanut." *Greer v. Board of Educ. City of Chicago, Ill.*, 267 F.3d 723, 728 (7th Cir. 2001). Employment discrimination cases are very fact-intensive, and district courts are not required under our "adversary system to scour the record looking for factual disputes . . . ." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994). In the context of summary judgment, a district court

need not, even for pro se plaintiffs, "scour the record looking for factual disputes," and a pro se party cannot avoid summary judgment without demonstrating a material dispute of fact. *Greer,* 267 F.3d at 727.

## DISCUSSION

Newell levies a variety of factual occurrences that she submits establish her two ADA claims.  Initially, Newell claims that she was discriminated against based on her disability in violation of the ADA when Alden Village terminated her employment. Newell's complaint confines her ADA discrimination allegations to the circumstances surrounding her termination.  Additionally, Newell alleges that Alden Village failed to reasonably accommodate her disabilities in violation of the ADA.    Unlawful discrimination under the ADA includes both discriminatory discharge and the failure to provide reasonable accommodations. 42 U.S.C. § 12112(a), (b)(5)(A).

### I. ADA Disparate Treatment Claim

Newell alleges in her complaint that Alden Village terminated her because of her disability.  To be clear, Newell's allegations of ADA discrimination are confined to the circumstances surrounding her December 2011 work release, which eventually led to her termination in late 2012.   Newell's complaint does not reference discrimination in any other action taken by Alden Village.  Therefore, the Court will confine our inquiry to the events surrounding her dismissal from work in December 2011.

The ADA prohibits an employer from discharging an employee "on the basis of [a] disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, an employee must show: (1) that she is disabled; (2) is qualified to perform the essential functions of her job with or without a reasonable accommodation; and (3) that the employer took an adverse job action against her because of her disability. *Winsley,* 563 F.3d at 603. "The first two requirements are simply restatements of the statutory elements specifying that the plaintiff must be a "qualified individual with a disability" in order for the ADA to apply." *Timmons v. General Motors*, 469 F.3d 1122, 1127 (7th Cir. 2006); 42 U.S.C. § 12102(2). If the plaintiff cannot satisfy these first two elements, they cannot be covered by the ADA. *Id.* Once a plaintiff establishes that she is protected by the ADA, then she can proceed to establish the third element of the test by using the direct or indirect *McDonnell Douglas* approach; that she suffered an adverse employment action because of her disability. *Id*.

Alden Village argues that Newell cannot establish a prima facie discrimination case because Newell cannot prove she is a "qualified individual" under the ADA. A "qualified individual with a disability" is defined, in relevant part, as: "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Initially, the Court will determine if Newell has a disability

prior to evaluating whether she can perform the essential functions of her position with or without a reasonable accommodation.

### A. Disability

To invoke the protections afforded under the ADA, a plaintiff must first prove that she is disabled within the meaning of the ADA. *Cassimy v. Bd. of Educ. of Rockford Pub. Sch. Dist. No. 205*, 461 F.3d 932, 935-36 (7th Cir. 2006). The ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Alden Village argues that Newell has not established she is disabled under the requirements of the ADA. However, the cases that Alden Village relies on in support of its assertion pre-date the expansive 2008 amendments to the ADA. The ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive. ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (effective January 1, 2009). "The question of whether an individual meets the definition of [a] disability under [the ADA] should not demand extensive analysis." 29 C.F.R. § 1630.1(c)(4). The ADAAA redefines "disability" to provide expansive coverage to the maximum extent permitted by the terms of the ADA. *Id.* The term "substantially limits" is to be construed broadly in favor of expansive coverage. 29 C.F.R. § 1630.2(j)(l)(i).

Alden Village contends that Newell's limited ability to use her wrist is a temporary injury and does not substantially limit any major life activities. Newell asserts the TFCC tear in her left wrist inhibits her "ability to lift" and prevents her from "buttoning clothing, fastening normal bras, stabilizing food in order to cut, difficulty turning a steering wheel in an automobile, [and] opening jars and cans." Lifting, caring for oneself, and performing manual tasks all qualify as "major life activity." 29 C.F.R. § 1630.2(i)(1)(i) (2012). "An impairment need not prevent or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(l)(ii).

Alden Village's contention that Newell's injury is temporary in nature is contradicted by the record. The record indicates that Newell's wrist injury had not improved over the course of her two-year treatment. Based on Newell's limited ability to perform personal care functions and the prolonged documented treatment of her injury, the Court finds that the TCFF tear in Newell's wrist constitutes an ADA covered disability that substantially limits her major life activities.

### B. Perform Essential Functions of Position

In addition to establishing she has a disability; Newell must also show that she can perform the "essential functions" of her job with or without a reasonable accommodation. 42 U.S.C. § 12111(8); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 (7th Cir. 1996). Determining whether an individual meets the definition of a "qualified individual" is a two-step inquiry. 29 C.F.R. app. § 1630.2(m). The first

step in determining if an individual is "qualified" is to identify if the person satisfies the prerequisites of the position, such as the educational background, experiences, and skills. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). If this is established, the Court must then determine "whether or not the individual can perform the essential functions of the position held or desired, with or without a reasonable accommodation." *Id.* (quoting 29 C.F.R. app. § 1630.2(m)).

Newell's qualifications for the position are not disputed here, so the Court will focus on the second inquiry; Newell's ability to perform the essential functions of her position. Alden Village argues that Newell could not perform the essential functions of her position as a habilitation specialist with or without a reasonable accommodation. To determine the essential functions of a job, "we look to the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005). Alden Village contends that physically moving and lifting residents, and close contact with residents, is an essential function of Newell's position which she could not perform. Alden Village supplied a job description to Newell at the beginning of her employment specifying the requirements of a habilitation specialist. The job description states that the "[m]ajority of work requires physical exertion more than half of the time with moderate to heavy physical effort commonly required; walking and standing for sustained periods of time including working in awkward positions; including handling

and lifting residents."  Additionally, Newell testified that she performed a variety of physical tasks in the course of her duties, such as changing residents' clothes, cleaning wheelchairs, lifting residents in and out of beds, and bathing residents.  Based on the job description of a habilitation specialist and Newell's experiences when performing her job, we find that physically lifting and moving residents; and being in close contact with them, is an essential function of a habilitation specialist.

Newell bears the burden of establishing that she could perform the essential functions of the position with or without reasonable accommodation. *Gratzl v. Office of Chief Judges of 12th, 18th, & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010).  Newell concedes that her "physical injury prohibits her ability to lift and manage the patients."  Newell has difficulty gripping and holding objects, and experiences numbness and tingling when performing the slightest of tasks.

Beyond Newell's physical limitations, her physician issued work restrictions instituted in March 2011 and expanded in December 2011 prohibiting patient contact. We previously determined that close contact with residents was an essential function of her position.  Newell's inability to work and interact with Alden Village's residents would not allow her to perform her duties as a habilitation specialist.  In light of the physically taxing nature of her position as a habilitation specialist, Newell cannot establish that she can perform the essential functions of her position without a reasonable accommodation.  We now turn to Newell's proffered reasonable accommodation.

Newell suggests that she could have performed the essential functions of her position in December 2011 with the reasonable accommodation of relegating her job duties to residents that were "non-violent" to avoid the potential for injury in dealing with aggressive/combative individuals. Newell asserts she could have performed the essential functions of her position by working with 90% of the residents at Alden Village who were "non-violent." However, Newell's work restrictions in addition to Newell's own assertions about her physical abilities contradict that contention.

In light of Newell's limited ability to move her wrist, and her prohibition from using her left arm in the course of her work, the record suggests that the scope of accommodating Newell is broader than merely assigning her to complacent residents. Merely shielding her from disruptive patients would not alleviate the need for her to lift and move the 90% of residents which she claims would be a reasonable accommodation. Lifting and moving residents, whether combative or docile, was a task that Newell would not have been able to perform, because of her injury.

Additionally, Newell's work restrictions, requiring no resident contact were put in place in May 2011 and expanded in December 2011, conflict with Newell's proposed accommodation. On December 19, 2011, Newell returned and subsequently went back to her treating physician in late December 2011 for a work status update concerning the scope of her ability to work at Alden Village. On December 30, 2011, Hinsdale Orthopedics submitted Newell's work status report which explicitly stated that she was not supposed to "work or interact with residents." The work restrictions

were inclusive of all residents, and did not specify which residents Newell could or could not work with. After receiving Newell's expanded work restrictions prohibiting her from merely interacting with residents Longo informed Newell that she did not have a position available at Alden Village that did not involve some resident interaction.

Newell had been working under her May 2012 work restriction which required no contact with residents. Alden Village was able to accommodate this work restriction by placing her in the laundry department. However, Newell's December 30, 2011 work restriction expanded the scope of her work restrictions necessitating her to abstain from working or interacting with residents. It is well established that the ADA does not require an employer to disregard documented, uncontroverted medical restrictions. *See Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 484-85 (7th Cir. 2002). If an employer contravened medical restrictions, it would open the employer up to separate ADA liability for failure to abide by restrictions. *Id.* After Alden Village received Newell's December 2011 work restrictions she never submitted any revised work restrictions indicating the removal of the patient interaction requirement. In the absence of a physician's permission to work, Alden Village permissibly exercised its discretion to prohibit Newell from working in an environment which would have disregarded her medical work restrictions. *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 954 (7th Cir. 2000) (approving of reliance on medical records providing specific restrictions).

Newell has not shown that she could perform her position with or without a reasonable accommodation. Therefore, the Court concludes that Newell is not a qualified individual and cannot prove the first element of her prima facie case. Alden Village's motion for summary judgment is granted on this claim.

## II. ADA Failure to Accommodate Claim

Newell claims Alden Village failed to accommodate her as required under the ADA. Under the ADA, an employer's failure to make a reasonable accommodation for a known disability of an employee constitutes prohibited discrimination. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (citing 42 U.S.C. § 12112(b)(5)(A)). Reasonable accommodations may include such things as job restructuring and part-time or modified work schedules. 42 U.S.C. § 12111(9)(B). Before an employer may be liable for failing to provide an employee with reasonable accommodations, the employer must be aware of the employee's disability. *Beck v. University of Wisconsin Bd. of Regent*, 75 F.3d 1130, 1134-35 (7th Cir. 1996). To sustain a claim of failure to accommodate, Newell must show that: (1) she is a qualified individual with a disability; (2) Alden Village knew of her disability; and (3) Alden Village failed to reasonably accommodate her disability. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013). To survive a motion for summary judgment, a plaintiff must present the Court with evidence that, if believed by a trier of fact, would establish all three elements of her claim. *Id.* "The duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the

disabled worker to work in reasonable comfort." *Cloe v. City of Indianapolis,* 712 F.3d 1171, 1176 (7th Cir. 2013).

Admittedly, Newell's allegations concerning the scope of Alden Village's failure to accommodate her disability are convoluted and concern various obscure allegations about Alden Village's unlawful conduct. Some of the incidents are mentioned in passing, while others are submitted in more detail. In the interest of thoroughness, we will address all incidents. In interpreting the parameters of Newell's complaint in conjunction with her response to Alden Village's summary judgment motion, it appears that Newell alleges that Alden Village failed to accommodate her disability when: (1) Alden Village failed to reassign her in December 2010 for a scheduling position; (2) Alden Village did not accommodate her disability in February 2011 after she returned to work following the re-injury of her wrist; and (3) Alden Village told her she could not work in its facility in December 2011.

First, we will take up Newell's allegations surrounding her December 2010 application to be transferred to a scheduling position. Outside of Newell's assertion in her response brief to Alden Village's motion for summary judgment, Newell has not sufficiently asserted a sufficient failure to accommodate claim. In Newell's complaint she briefly mentions in three sentences that she was not hired for a scheduling position December 2010. However, Newell's allegations are framed to assert her previous failure to promote and retaliation claims, which were previously dismissed because

they were not included in her EEOC charge of discrimination. *Newell v. Alden Village*, 12-cv-7185, Doc. 50 (N.D. Ill. October 17, 2013). Newell "may not amend h[er] complaint through arguments in h[er] brief in opposition to a motion for summary judgment." *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002) (quoting *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir. 1996)). Aside from Newell's failure to sufficiently allege the unlawful conduct in the context of a failure to accommodate claim, Newell has not submitted evidence to support her claim. Newell does not point to any evidence in the record concerning the surrounding circumstances of her application, the individuals that applied for the position or which were hired, the extent of Newell's injury at the time of the application, Alden Village's knowledge of her application, or Newell's request for an accommodation. In the absence of this essential information, Newell cannot support her failure to accommodate claim based on her December 2010 application for a scheduling position.

Newell faces a similar hurdle in establishing Alden Village failed to accommodate her after she re-injured her wrist in February 2011. Newell's complaint is void of any allegations of Alden Village's failure to accommodate her following her February 2011 re-injury. The record indicates that Newell returned to work after her February 2011 re-injury and was restricted to light duty work, which Alden Village complied with. At that time, Newell did not have a physician imposed work restriction concerning her contact with residents. Newell was assigned to supervise

residents in Alden Village's activity room. Newell was not required to perform the manual tasks normally required of a habilitation specialist. In March 2011, Alden Village received Newell's physician work restriction which required that Newell abstain from resident contact. Alden Village again complied with Newell's work requirements, and placed her in the laundry department until she left work in October 2011. Newell has not sufficiently asserted a failure to accommodate claim concerning her February 2011 re-injury. In the absence of such allegations in the complaint and an insufficient record, Newell cannot succeed in her February 2011 allegations. *See Grayson,* 308 F.3d at 817.

Newell's final allegation involves Alden Village's failure to accommodate her when she returned to work in December 2011. Like Newell's ADA discrimination claim, the first element of her accommodation claim establishes that she is a covered under the ADA. Therefore, Newell must establish that she is a qualified individual with a disability. Alden Village argues that Newell still cannot establish that she is a qualified individual. As we discussed in our initial ADA discrimination analysis, a "qualified individual" is someone with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Newell is once again mired in establishing that she can perform the essential functions of a habilitation specialist with or without a reasonable accommodation in the time period between her return to work on December 19, 2011 and her last day of

December 30, 2011.  Following Newell's returned to work on December 19, 2011 as a habilitation specialist; she was still under her previous May 2011 work restriction which forbade her contact with residents.  Not only was Newell prohibited from working with residents, she was also not physically able to perform the physical requirements of her position.  Newell's physician report states that she has a limited range of motion and that she cannot physically lift objects with her left arm.  As we determined above, physical interaction and the movement of residents is an essential function of her position as a habilitation specialist.  Newell could not perform the essential functions of her position in the time between her return to work on December 19 and her dismissal on December 30, not only because of her physical limitations in moving residents due to her wrist injury, but also because her work restrictions forbade patient contact.  Due to Newell's patient contact restrictions and her physical limitations, she could not perform the physical requirements of her position.  Therefore, Newell cannot establish the first element of an ADA failure to accommodate claim, that she is a qualified individual.

Assuming arguendo that Newell could establish that she is a qualified individual, Newell still cannot prove that Alden Village failed to accommodate her disability.  Newell bears the burden of demonstrating that the accommodation she seeks is reasonable.  *Majors v. General Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013); *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002).  Newell does not mention the availability of her laundry department

position after her December 2011 return and does not seek her past position as a reasonable accommodation; in the absence of Newell's request for her past position the Court will not delve the availability of the laundry department job. The Court also acknowledges that laundry duties were not included in the job description of a habilitation specialist. Newell renews her argument that Alden Village could have placed her with non-violent residents, however as we determined above, this is not a viable accommodation in light of her work restrictions and her ability to physically move residents. Newell would require a helper for all physical tasks, which are an integral part of her position as a habilitation specialist. To have an employee perform a position's essential functions, and essentially perform the job for the employee, is not a reasonable accommodation. *Majors*, 714 F.3d 527, 534,

Not only has Newell failed to establish that a reasonable accommodation was possible, the record suggests that Alden Village made an accommodation which was offered to Newell to accommodate her injury. After an employee asks for an accommodation because of a disability, "the employer must engage with the employee in an 'interactive process' to determine the appropriate accommodations under the circumstances." *Kauffman v. Petersen Health Care VII, LLC*, 2014 WL 5285979, *4 (7th Cir. 2014). In July 2012, Alden Village sent Newell a letter offering her a new position as a nurse which conformed to her physicians work requirements. The letter set forth the compensation, the job duties and the start date. The letter concluded that Alden Village sought to "accommodate your limitations" and "ensure [her] successful

return to work." Newell never responded to the letter and she finally received a letter of termination in late 2012.

Newell has not shown that she is a qualified individual for the purposes of establishing her ADA failure to accommodate claim. Alden Village's motion for summary judgment is granted on this claim.

## CONCLUSION

For the aforementioned reasons, Alden Village's motion for summary judgment is granted on both claims.

_____
Charles P. Kocoras
United States District Judge

Dated:  12/1/2014